UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| POST CONSUMER BRANDS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. |
| v. | ) |
| | ) JURY TRIAL DEMANDED |
| GENERAL MILLS, INC., and | ) |
| GENERAL MILLS SALES, INC., | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

Plaintiff Post Consumer Brands, LLC ("Post") states as follows for its Complaint against Defendants General Mills, Inc. ("GMI") and General Mills Sales, Inc. ("GMS") (GMI and GMS may be referred to collectively as "GM"):

### NATURE OF THE ACTION – DESIGN PATENT INFRINGEMENT

1. Post is the market leader for breakfast cereals sold in bags. Post has worked hard to develop quality products and merchandising systems to improve the consumer's buying experience for bagged cereal products. In 2016, Post launched an innovative new plastic merchandising system for displaying its bagged cereals on grocery store shelves. Each merchandising system was marked "Patent Pending" because of Post's pending patent applications. In early 2017, GM brought virtually the same plastic merchandising system design to market with its own, recently-introduced line of bagged cereals:

  

**Post Divider**                                     **GM Divider**

**BACKGROUND**

2. In 2015, Post Holdings, Inc. (the St. Louis-based parent company of Plaintiff Post Consumer Brands, LLC) acquired MOM Brands Company, LLC, a smaller breakfast cereal manufacturer that for years has produced a successful line of value-priced bagged cereals under its Malt-O-Meal brand. From the time Malt-O-Meal bagged cereals were first launched in the 1970s, competitors in the industry – including GM – criticized Malt-O-Meal bagged cereals as inferior quality products and as being too big for store shelves. However, as boxed cereal sales have declined recently, Malt-O-Meal bagged cereal sales have continued to grow. Post attributes this growth to the value and quality of Post's products and Post's dedication to innovation in this area as a whole. GM has now sought to capitalize on Post's bagged cereal success by rushing to enter the bag cereal market with a copycat merchandising system that imitates Post's innovative divider and merchandising system ("the Post Divider" and "the Post Merchandising System")[1] for bagged cereals.

3. As explained in greater detail below, Post invested substantial time, money and research in developing the Post Merchandising System. When the Post Merchandising System came to market in 2016, no other merchandising system like it existed on the market. It was and is a revolutionary departure from previous shelf merchandising systems, including those used with bagged cereals. The innovative nature of the Post Divider has been recognized and appreciated not only from a consumer and retailer standpoint, but also by the United States Patent and Trademark Office ("USPTO"), which on September 26, 2017 issued U.S. Patent No.

---

[1] The '091 patent claims ornamental features of the Post Divider. Multiple dividers work together to create the Post Merchandising System.

D798,091 ("the '091 patent") to Post.[2]  GM's use of the ornamental design claimed in the '091 patent is an infringing and unauthorized use.

4. This is an action for patent infringement under the patent laws of the United States, Title 35 of the United States Code, arising from GM's infringement of the '091 patent by its manufacture, use, offer for sale, sale in and/or importation into the United States of a copycat merchandising system for bagged food items, including bagged cereals.

5. Post seeks injunctive relief and has been damaged monetarily in an amount to be determined at trial.  Further, Post seeks to recover all other recoverable fees and costs.

## PARTIES

6. Post is a Delaware limited liability company formed in 2016 with a principal place of business at 2503 S. Hanley Road, St. Louis, Missouri 63144.  *See* Exhibit A.  Post's parent company, Post Holdings, Inc., is located in St. Louis, Missouri.

7. Upon information and belief, GMI is a Delaware corporation with a place of business located at 1 Red Devil Road, Hannibal, Missouri 63401.  *See* Exhibit B.

8. Upon information and belief, GMS is a Delaware corporation with a place of business located at 1 Red Devil Road, Hannibal, Missouri, 63401.  GMS is registered to do business in Missouri and has appointed a registered agent in Missouri.  *See* Exhibit C.  Upon information and belief, GMS has employees and hires and directs contractors and/or agents in Missouri.  Upon information and belief, GMS has substantial annual sales of GMS products in Missouri.

## JURISDICTION AND VENUE

---

[2] In addition to the '091 patent, Post has received two other design patents on the Post Dividers used in the Post Merchandising System.

9. Post's claims arise under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq*. Subject matter jurisdiction exists pursuant to 28 U.S.C. §§ 1331 and 1338(a) (patents).

10. This Court has personal jurisdiction over GMI and GMS. Upon information and belief, GM owns, uses, or possesses a physical place of business in this judicial district located at 1 Red Devil Road, Hannibal, Missouri 63401. Upon information and belief, GM owns, uses, or possesses other real estate in Missouri. GM has also committed the tortious acts complained of herein in Missouri, including but not limited to the making, using, selling, or offering for sale infringing products accused herein, and directed its infringing products at residents in the State of Missouri and in this judicial district. Attached hereto as Exhibit D is a true and correct copy of a photograph of the infringing products in use at a Walmart store located in Arnold, Missouri, in this judicial district. GM distributes its infringing products within this judicial district, including at Walmart stores in the St. Louis area. Further, Post's claims arise out of or relate to GM's activities in Missouri.

11. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400(b) because GM has committed acts of infringement in this judicial district where the infringing product can be found, and has at least one regular and established physical place of business in this judicial district located at 1 Red Devil Road, Hannibal, Missouri 63401 (depicted below). *See also* Ex. B.





GM also does business in this judicial district through a permanent and continuous presence here.  Upon information and belief, GM has employees and pays contractors and/or agents in this judicial district, including individuals who work with the infringing products in this judicial district, and who oversee and conduct installation of the infringing merchandising systems in retail grocery stores, such as Walmart. *See* Ex. D, Photograph of Infringing Product in Arnold, Missouri.

## FACTS COMMON TO ALL COUNTS

### *Post*

12. Post is a leading manufacturer and distributor of branded ready-to eat ("RTE") cereals, and markets and sells its RTE cereals in retail and grocery stores throughout the United States.

13. The RTE breakfast cereal category is one of the most prominent and competitive categories in the food industry.

14. Post's RTE cereal brands include Honey Bunches of Oats, Pebbles, Great Grains, Grape-Nuts, Post Shredded Wheat, Honeycomb, Golden Crisp, Post Raisin Bran, Alpha-Bits, Mom's Best, and Malt-O-Meal.  Some of Post's cereal brands, including many of the Malt-O-Meal branded cereals, are packaged and sold in plastic bags.

15. Post's competitors, including GM, have criticized Post's Malt-O-Meal bagged cereal line to customers and investors for years, believing Post's Malt-O-Meal bagged cereal to be inferior and lower quality cereal.

16. For the past several years, sales of RTE boxed cereal have been declining, but sales of RTE bagged cereal have been growing.

17. Post has achieved a great deal of commercial success with its RTE cereals that are offered in bags, and has sold and continues to sell such products, through retailers across the nation, to millions of households.

### *The Problem Post Solved*

18. Historically, Post's bagged cereals were displayed in grocery stores using wire bins or similar partitions with horizontal, rectangular product signage:





Those systems had several disadvantages.  It was difficult to display the bagged cereals in a way that consumers could quickly see the bags of cereal actually contained in the bins behind the front panel.  Bins appeared empty when one or two bags still remained, because the remaining bags were obstructed from view by the horizontal banner-like signage shown in the below photos.  This problem was particularly noticeable on the top shelves.  Further, the horizontal banner-like signage did not fully distinguish Post's bagged cereals from competitor's bagged cereals, and was not effective in clearly communicating the specific product offerings to consumers.  A further disadvantage was that the wire bins were heavy, had many components, did not efficiently use shelf space, and were difficult and expensive to install and adjust.



19. Over the course of several years, Post invested significant resources in the development of a new merchandising system design for its leading brand of bagged cereals, Malt-O-Meal.  The Post Merchandising System has an open front and vertically-oriented, trapezoidal front panel that allows for bagged cereal to be better organized and displayed to consumers on store shelves, and also allows for consumers, store employees, or others to easily see behind the front panel to discern the brand of cereal.  Post included ornamental features on

the Post Divider and has applied for and received United States design patents on these ornamental features, including the '091 patent.

20. The Post Divider features a front panel having a novel and distinctive ornamental trapezoidal shape that was inspired by the trapezoidal shape of Post's well-known Malt-O-Meal logo, shown below:



21. The Post Divider is a plastic, transparent divider (depicted below):



When installed, the Post Merchandising System allows for bagged cereals to be neatly aligned and provides the consumer an easy and efficient shopping experience:



22. The ornamental trapezoidal front portion of the Post Merchandising System also includes a clear cover for inserting vertical product image panels ("PIPs") to display the brand of cereal. The product image panels identify the specific bagged cereal product housed in the Post Merchandising System and display the brand of the cereal to consumers. The colored, cardboard product image panels are designed specifically to fit coextensively from edge-to-edge and top-to-bottom with the uniquely dimensioned trapezoidal front portion of the Post Merchandising System.

23. A Post Divider with a product insert panel installed in the trapezoidal front portion is depicted below:



24. To highlight the improvements in Post's new design, Post's old wire merchandising system (used prior to 2016) is depicted below next to the new Post Merchandising System:

 

25. Post began using the Post Merchandising System in connection with the sale of its bagged cereal products in 2016. Since that time, the Post Merchandising System has been used in the sale of Post's bagged cereals throughout the United States, including at various grocery retailers such as Walmart, Hy-Vee, Meijer, and Kroger stores. The Post Merchandising System has improved sales of Post's bagged cereals since June 2016.

26. Because the Post Merchandising System optimizes the shelf space and functions well with shorter stacks of cereal bags, Post is able to add a fifth shelf to the bagged cereal section and stock 25% more bagged cereals on shelves than with the old wire merchandising system. The Post Merchandising System has improved the "shopability" and appearance of Post's bagged cereals for consumers and, in turn, has attracted new consumers and broadened Post's customer base. The Post Merchandising System has also resulted in more repeat purchasers of Post's bagged cereals. Additionally, the Post Merchandising System has driven positive visual impact at the shelf and helped to dispel the notion that Post's bagged cereals are

"inferior" products as compared to boxed cereals.  The ornamental design of the Post Divider, which was inspired by the logo, creates goodwill and brand awareness for Post.

### Post's Design Patent

27.  Prior to launching the new design, Post applied for patent protection with respect to the Post Divider used in the Post Merchandising System, which resulted in the issuance of the '091 patent on September 26, 2017.  Post is the owner by assignment of the '091 patent.

28.  The '091 patent is valid, enforceable, and duly issued in compliance with Title 35 of the United States Code.  True and correct copies of the issue notification for the '091 patent and allowed claim of the '091 patent are attached hereto as Exhibit E.[3]

29.  The Post Merchandising System has been marked "Patent Pending" and otherwise marked in accord with 35 U.S.C. § 287.



### GM's Infringing Activities

30.  GM manufactures and sells RTE cereals. Historically, GM has sold breakfast cereal only in traditional paperboard cartons, not in larger plastic bags like the ones offered by Malt-O-Meal.  Upon information and belief, in early 2017, GM began to package and sell some of its RTE cereal brands in plastic bags.

---

[3] The '091 patent issued on September 26, 2017, just before this Complaint was filed.  Post will supplement Exhibit E with a true and correct copy of the '091 patent when it is printed.

31. GM and Post are direct competitors in the RTE breakfast cereal category in the food industry. GM is the second largest seller of RTE cereals in the United States, and Post is the third largest seller. GM and Post deal in the same channels of trade and both do substantial business in the same stores. Stores generally sell all cereal products in the same aisle and display Post's bagged cereals near GM's bagged cereals.

32. After Post began displaying its bagged cereals using the Post Merchandising System at stores across the nation, GM emerged with its own divider and divider system ("the Infringing Divider" and "the Infringing Merchandising System") for its bagged cereals in early 2017. The divider used in the Infringing Merchandising System copies the Post Merchandising System, the Post Divider, and infringes Post's '091 patent:

 

33. The Infringing Divider is depicted below as compared to the Post Divider and the ornamental design claimed in the '091 patent.[4]



---

[4] The solid lines depicted in the figures of the '091 patent represent the design claimed in the '091 patent. The dashed lines depicted in the figures of the '091 patent represent unclaimed environment and form no part of the claimed design.



34. Without Post's authorization, GM has made, used, sold, offered for sale, and/or imported into the United States the Infringing Merchandising System that infringes the '091 patent. Upon information and belief, GM has implemented the Infringing Merchandising System at retail stores across the United States.

35. An ordinary observer, familiar with the prior art in the field, would perceive the overall appearance of the design of the '091 patent and the design of the Infringing Divider and Infringing Merchandising System to be substantially the same. Such an ordinary observer would be deceived into believing that the Infringing Divider and Infringing Merchandising System are the same as the design claimed in the '091 patent.

36. The '091 patent protects several novel and ornamental aspects of the Post Merchandising System design. These ornamental features are illustrated in Figures 1-7 of the '091 patent.

37. The ordinary observer, informed by the relevant prior art, would be misled by the Infringing Divider and Infringing Merchandising System into believing that GM is authorized to distribute products that copy the ornamental designs claimed in the '091 patent.

38. The Infringing Divider features the claimed designs of the '091 patent.

39. On store shelves, the Infringing Merchandising System (depicted on the next page on the right) is often used immediately adjacent to the Post Merchandising System (depicted on the next page on the left):



40. GM's imitation of the Post Merchandising System dilutes the uniqueness of Post's overall marketing and brand, harming Post beyond infringement of the '091 patent.

41. Because of the proximity and similarity of the products and merchandising systems, customers, store employees and/or vendors stocking the parties' cereals on shelf have erroneously placed GM's bagged cereals into the Post Merchandising System (depicted below) and Post's bagged cereals into the Infringing Merchandising System:



42. The dimensions of the front trapezoidal panel of the Infringing Divider and the Infringing Merchandising System are virtually identical to the dimensions of the trapezoidal front panel of the Post Merchandising System.  Thus, Post's product image panels for its branded cereals, which are designed specifically to fit and be used exclusively with the Post Merchandising System, have been inserted into the front panels of the Infringing Merchandising System.  Similarly, GM's product image panels, which have virtually identical dimensions, have been inserted into the front panels of the Post Merchandising System:



*Post's Contacts with GM*

43. In late February 2017, Post first became aware that GM was making and using the Infringing Merchandising System.

44. On March 7, 2017 and May 17, 2017, Post, through counsel, sent letters to William Miller, Chief IP Counsel for Defendant General Mills, Inc., advising that Post had filed design and utility patent applications on the Post Divider and expressing Post's concerns that GM had developed a potentially infringing design.

45. On June 20, 2017, Post, through counsel, sent another letter to counsel for Defendant General Mills, Inc. and, in response to GM counsel's request, provided some of the design drawings covered by the then-pending design patent application for the '091 patent.

46. Upon information and belief, GM was aware of the Post Merchandising System before it launched its Infringing Merchandising System. Post believes the evidence will show that GM deliberately copied the Post Divider and the Post Merchandising System when it selected and manufactured the Infringing Merchandising System.

## COUNT I
## GM'S INFRINGEMENT OF THE '091 PATENT

47. Post incorporates by reference, as if fully set forth herein, paragraphs 1-46 of this Complaint.

48. On September 26, 2017, the United States Patent and Trademark Office duly and legally issued the '091 patent.

49. The '091 patent is directed to an "ornamental design for a shelf divider for display of bagged food items" as shown in Figures 1 through 7 of the '091 patent.

50. Post is the owner of the entire right, title and interest in and to the '091 patent, by assignment.

51. GM knew of Post's pending patent applications that issued as the '091 patent. Upon information and belief, at least as early as the service of this Complaint, GM has been and is infringing the '091 patent under one or more subsections of 35 U.S.C. § 271.

52. GM has made, used, sold, and/or offered for sale within the United States, and/or imported into the United States, one or more divider products, including but not limited to the Infringing Divider used in the Infringing Merchandising System, that infringe the '091 patent. The design of GM's Infringing Divider used in the Infringing Merchandising System, in the eye

of the ordinary observer, who is familiar with the prior art in the field, appears substantially similar to the ornamental design of the '091 patent.

53. Upon information and belief, GM knew of Post's pending patent application that issued as the '091 patent and has continued to make, use, sell, offer for sale, or import the Infringing Merchandising System following notice of Post's patent rights.

54. GM has damaged and will continue to damage Post in an amount to be determined at trial.

55. GM has irreparably injured Post and such injury will continue unless GM is enjoined by this Court.

## JURY TRIAL DEMANDED

56. Post hereby demands a jury on all jury triable issues.

## PRAYER FOR RELIEF

**WHEREFORE**, Post prays for judgment against GM as follows:

A. Preliminarily[5] and permanently enjoin GM and any person acting in concert with it from further infringement of the '091 patent pursuant to 35 U.S.C. § 283;

B. Declare that the '091 patent is valid, enforceable, and infringed by GM;

C. Award Post the profits of GM, in accordance with 35 U.S.C. § 289, resulting from GM's infringement of the '091 patent, actual damages to Post in an amount not less than a reasonable royalty for GM's infringement, and other damages and relief as allowed by 35 U.S.C. § 284;

D. Order the removal from the marketplace and destruction of all of GM's products that infringe the '091 patent;

---

[5] Post will file a separate motion for preliminary injunction and accompanying memorandum.

E.  Prohibit GM from further making, using, selling, offering for sale, or importing of all of GM's products that infringe the '091 patent;

F.  Treble the damages in accordance with the provisions of 35 U.S.C. § 284;

G.  Find the case to be exceptional and award appropriate relief thereunder;

H.  Award Post reasonable attorneys' fees;

I.  Award Post interest and costs;

J.  Order an accounting of GM's profits relating to the infringement of the '091 patent;

K.  Order GM to pay Post damages for GM's willful infringement, since at least the service of this Complaint;

L.  Order GM to report to this Court of its compliance with the foregoing within thirty (30) days of judgment; and

M.  For such other and further relief that the Court deems just and proper.

Date: September 26, 2017

Respectfully submitted,

THOMPSON COBURN LLP

By: /s/ Steven E. Garlock
Steven E. Garlock, 38346MO
Matthew A. Braunel, 50711MO
Katherine E. Colvin, 65845MO
THOMPSON COBURN LLP
One US Bank Plaza
St. Louis, Missouri 63101
(314) 552-6000
(314) 552-7000 (fax)
sgarlock@thompsoncoburn.com
mbraunel@thompsoncoburn.com
kcolvin@thompsoncoburn.com

*Attorneys for Plaintiff Post Consumer Brands, LLC*